# Violet E. Pfeiffer Trust

I, **VIOLET E. PFEIFFER**, have transferred ten dollars to myself as trustee. That asset and any other assets received by the trustee (the "trust estate") shall be held in trust subject to the provisions of this instrument.

## Article 1
## Introduction

1.1 Family. My "spouse" is **HERBERT H. PFEIFFER**. I have three (3) children now living, namely **CHARLOTTE A. OLSON, MAPLE OLSON** and **LYNN K. PFEIFFER**. I intend by this instrument to provide for all my children, including any born or adopted in the future.

1.2 Name of Trust. The name of this trust, as amended at any time and from time to time, shall be the **VIOLET E. PFEIFFER TRUST**.

## Article 2
## Lifetime Trust

2.1 Right To Amend or Revoke. I reserve the right from time to time to amend or revoke this instrument in whole or in part by instrument (other than my Will) signed by me, referring to this instrument, and delivered to the trustee during my life. If I revoke this instrument, the trustee shall deliver the trust estate to me or as I direct.

2.2 Payments During My Life. During my life, the Lifetime Trust shall be administered for my primary benefit. As long as I am not incapacitated, the trustee shall pay to me as much of the income and principal as I shall request from time to time. If I become incapacitated, then while I am incapacitated, the trustee (a) shall pay to me as much of the income and principal as the trustee considers advisable for my health, maintenance in reasonable comfort, or best interests and (b) may pay as much of the income and principal as the trustee considers necessary for the health, maintenance in reasonable comfort, or education of any person dependent on me. Any income not so paid in each year and any income not so paid at my death shall be added to principal.

2.3 Determination of Incapacity. I shall be incapacitated if I am under a legal disability or unable to give prompt and intelligent consideration to financial affairs. The determination of my inability shall be made in writing, signed by my personal physician and, if my spouse is then living and able to so act, by my spouse, and delivered to the trustee. The trustee may rely conclusively on that writing.

2.4 Exclusion Gifts. If I become incapacitated, then while I am incapacitated, the trustee may make Annual Exclusion Gifts and Tuition and Medical Exclusion Gifts from the principal of the Lifetime Trust to any one or more of my descendants and their spouses in amounts the trustee considers appropriate.

Cross-Plaintiffs' Exhibit A

(a) Annual Exclusion Gifts. Annual Exclusion Gifts shall be made in such a manner as to qualify for the federal gift tax "annual exclusion" under Code §2503(b). Annual Exclusion Gifts to each person in any calendar year shall not exceed the maximum allowable amount of the annual exclusion for an unmarried donor or twice that amount if I am married at the time of the gift.

(b) Tuition and Medical Exclusion Gifts. Tuition and Medical Exclusion Gifts shall be made in such a manner as to qualify for the federal gift tax exclusion under Code §2503(e). "Tuition and Medical Exclusion Gifts" means amounts paid on behalf of a person as tuition to an educational organization for the education or training of that person or to a medical care provider for the medical care of that person.

Article 3
Gifts on My Death

On my death, the trustee shall distribute the following gifts from the trust estate:

3.1 Tangible Personal Property. The trustee shall make gifts of tangible personal property as I direct by any written instrument signed by me. "Tangible personal property" means all personal and household effects, jewelry, automobiles, collections, and other tangible personal property that I own at my death or that is then included as part of the trust estate (including insurance thereon but excluding business use property, precious metals, and unset gems). I may from time to time amend or revoke the written instrument, and any subsequent instrument shall control to the extent it conflicts with prior ones. Any decisions made in good faith by the trustee in distributing tangible personal property shall not be subject to review, and the trustee shall be held harmless from any cost or liability as to those decisions. I shall be deemed to have left only those written instruments that the trustee is able to find after reasonable inquiry within 60 days after my death.

3.2 Gifts of Remaining Tangible Personal Property. I give all tangible personal property not otherwise effectively disposed of to my spouse, if my spouse survives me, or if my spouse does not survive me, in shares of equal value to my children who survive me (to the exclusion of the descendants of any child who does not survive me), to be divided among them as they agree or, if they cannot agree within 60 days after my death, as the trustee determines.

3.3 Gifts if Spouse Survives. If my spouse survives me, then I make the following gifts:

(a) Family Trust. I give the tax-sheltered gift to the trustee to hold as the Family Trust.

(b) Marital Trust. I give the balance of the trust estate to the trustee to hold as the Marital Trust.

3.4 Gifts if Spouse Does Not Survive. If my spouse does not survive me, then I make the following gifts:

(a) One (1) share to my husband's son, **MICHAEL J. PFEIFFER**, and if he does not survive me, then per stirpes to his descendants who survive me;
(b) One (1) share to my husband's son, **PATRICK W. PFEIFFER**, and if he does not survive me, then per stirpes to his descendants who survive me;

2

(c) One (1) share to my daughter, **CHARLOTEE A. OLSON**, and if she does not survive me, then per stirpes to her descendants who survive me;

(d) One (1) share to my daughter, **MAPLE OLSON**, and if she does not survive me. then per stirpes to her descendants who survive me; and

(e) One (1) share to my daughter, **LYNN K. PFEIFFER**, and if she does not survive me, then per stirpes to her descendants who survive me.

3.5 Survivorship. Only persons, other than my spouse, living on the 30th day after the day of my death shall be deemed to have survived me for purposes of this Article. However, my spouse shall not be deemed to have survived me if the order of our deaths cannot be proved.

Article 4
Marital Trust

The trustee shall administer the Marital Trust as follows:

4.1 Mandatory Payment of Income. Beginning with my death, the trustee shall pay all the income to my spouse.

4.2 Discretionary Payment of Principal. The trustee may pay to my spouse as much of the principal as the trustee from time to time considers necessary for the health or maintenance in reasonable comfort of my spouse.

4.3 Payment of Death Taxes. On the death of my spouse, unless my spouse directs otherwise by will or revocable trust specifically referring to this instrument, the trustee shall pay the Marital Trust death taxes.

4.4 Power of Appointment at Death. On the death of my spouse, the trustee shall distribute the Marital Trust not required for payment of the Marital Trust death taxes to any one or more of my descendants and their spouses as my spouse appoints by will, specifically referring to this power of appointment.

4.5 Distribution on Termination. On the death of my spouse, the trustee shall distribute the Marital Trust not required for payment of the Marital Trust death taxes and not effectively appointed as follows:

(a) One (1) share to my husband's son, **MICHAEL J. PFEIFFER**, and if he does not survive me, then per stirpes to his descendants who survive me;

(b) One (1) share to my husband's son, **PATRICK W. PFEIFFER**, and if he does not survive me, then per stirpes to his descendants who survive me;

(c) One (1) share to my daughter, **CHARLOTEE A. OLSON**, and if she does not survive me, then per stirpes to her descendants who survive me;

(d) One (1) share to my daughter, **MAPLE OLSON**, and if she does not survive me. then per stirpes to her descendants who survive me; and

(e) One (1) share to my daughter, **LYNN K. PFEIFFER**, and if she does not survive me, then per stirpes to her descendants who survive me.

Article 5
Family Trust

The trustee shall administer the Family Trust as follows:

5.1 Mandatory Payment of Income. Beginning with my death, the trustee shall pay all the income to my spouse.

5.2 Discretionary Payment of Principal. The trustee may pay to my spouse as much of the principal as the trustee from time to time considers necessary for the health or maintenance in reasonable comfort of my spouse. I recommend that the trustee make no payment of principal to my spouse if any part of the principal of the Marital Trust is reasonably available for those purposes.

5.3 Lifetime Power of Appointment. During my spouse's life, the trustee shall distribute the Family Trust to any one or more of my descendants and their spouses as my spouse from time to time appoints.

5.4 Power of Appointment at Death. On the death of my spouse, the trustee shall distribute the Family Trust to any one or more of my descendants and their spouses as my spouse appoints by will, specifically referring to this power of appointment.

5.5 Distribution on Termination. On the death of my spouse, the trustee shall distribute the Family Trust not effectively appointed as follows:

(a) One (1) share to my son, **MICHAEL J. PFEIFFER**, and if he does not survive me, then per stirpes to his descendants who survive me;
(b) One (1) share to my son, **PATRICK W. PFEIFFER**, and if he does not survive me, then per stirpes to his descendants who survive me;
(c) One (1) share to my wife's daughter, **CHARLOTEE A. OLSON**, and if she does not survive me, then per stirpes to her descendants who survive me;
(d) One (1) share to my wife's daughter, **MAPLE OLSON**, and if she does not survive me, then per stirpes to her descendants who survive me; and
(e) One (1) share to my daughter, **LYNN K. PFEIFFER**, and if she does not survive me, the per stirpes to her descendants who survive me.

Article 6
Distribution to Beneficiaries Under Prescribed Age

Any property to be distributed (other than a discretionary payment or a distribution pursuant to a power of appointment) to a beneficiary who is not a child of mine and is under age 25 at the time of distribution shall immediately vest in the beneficiary, but the trustee shall retain the property as a separate trust for the beneficiary on the following terms. The trustee may pay to the beneficiary as much of the income and principal as the trustee deems advisable for the beneficiary's health, maintenance in reasonable comfort, education, or best interests. Any income not so paid in each year shall be added to principal at the end of each year. The trustee shall distribute the remaining trust assets to the beneficiary when the beneficiary attains age 25 or to the beneficiary's estate if the beneficiary dies prior to receiving the assets. If at the time the trust is created or during the administration of the trust the beneficiary is under age 21, the trustee may

terminate the trust and distribute the property to a custodian for the beneficiary under a Uniform Transfers or Gifts to Minors Act.

## Article 7
## Contingent Gift Provision

On the death of the last to die of all beneficiaries of any trust (the "termination date"), any of the trust not otherwise distributable shall be distributed half to my heirs and half to my spouse's heirs. Heirs and their respective shares shall be determined under the laws of descent and distribution of Illinois at my death for property located in Illinois as if my spouse and I had each died on the termination date unmarried and domiciled in Illinois; provided, however, that **STELLA PFEIFFER** shall not be considered an heir of my husband and shall receive nothing under this provision.

## Article 8
## Trustee Succession

8.1 Successor Trustee. When I cease to act as trustee, my spouse shall be trustee.

8.2 Resignation. A trustee may resign at any time by signed notice to the co-trustees, if any, and to the income beneficiaries.

8.3 Individual Trustee Succession. Each acting individual trustee (unless limited in the instrument in which the trustee was designated) may, by signed instrument filed with the trust records, (a) designate one or more individuals or qualified corporations to act with or to succeed the trustee consecutively or concurrently, in any stated combination and on any stated contingency, and (b) amend or revoke the designation before the designated trustee begins to act.

8.4 Default of Designation. If at any time no trustee is acting and no designated trustee is able and willing to act, then the first of the following who is able and willing to act shall be trustee:

(a) my daughter, **CHARLOTTE A. OLSON**;

(b) my husband's son, **MICHAEL J. PFEIFFER**; and

(c) any individual or qualified corporation appointed in an instrument signed by a majority of the income beneficiaries.

8.5 Corporate Trustee Substitution. A corporate trustee may be removed at any time by an instrument signed by a majority of the income beneficiaries but only if, on or before the effective date of removal, a qualified corporation has been appointed corporate trustee in the same manner.

## Article 9
## Trustee Actions

9.1 Control. Except as otherwise provided, whenever more than one trustee is acting, the "trustee" means all trustees collectively, and a majority of the trustees qualified to participate in an action or decision of the trustees shall control. Any trustee who is not qualified to participate in or dissents from such action or decision shall not be liable therefor.

5

9.2 Accountings. Upon written request, the trustee shall send a written account of all trust receipts, disbursements, and transactions and the property comprising the trust to each income beneficiary and, at the option of the trustee, to the future beneficiaries of the trust. A future beneficiary of a trust is a person to whom the assets of the trust would be distributed or distributable if the trust then terminated. Unless court proceedings on the account are commenced within three months after the account is sent, the account shall bind and be deemed approved by all of the following beneficiaries who have not filed written objections to the account with the trustee within three months after the account is sent, and the trustee shall be deemed released by all such beneficiaries from liability for all matters covered by the account as though such account was approved by a court of competent jurisdiction: (a) each beneficiary to whom the account was sent and (b) if the account was sent to all income and future beneficiaries of the trust, then all beneficiaries of the trust who have any past, present, or future interest in the matters covered by the account.

9.3 Trustee's Right to Account Settlement Before Distribution. Before distribution of any trust principal, the trustee shall have the right to require settlement of any open accounts of the trust from which the distribution is being made, either by the written approval and release of all beneficiaries having an interest in the distribution or, if the releases cannot be obtained, by court settlement of the open accounts. All the trustee's reasonable fees and expenses (including attorneys' fees) attributable to approval of the trustee's accounts shall be paid by the trust involved.

9.4 Acceptance of Predecessor's Accounts. On the signed direction of the income beneficiaries, the trustee shall accept without examination the accounts rendered and property delivered by or for a predecessor trustee or my executor. Such acceptance shall fully discharge the predecessor trustee or my executor and shall bind all beneficiaries.

9.5 Notice. If a beneficiary is under legal disability, the trustee shall give any notice or accounting to the beneficiary's personal representative, if any, and if none, to a parent of the beneficiary, if any, and if none, to any person who the trustee believes has demonstrated concern for the interest of the beneficiary. That person may sign any instrument for the beneficiary.

9.6 Special Trustees. If the trustee (the "principal trustee") is unable or unwilling to act as trustee as to any property, such person or qualified corporation as the principal trustee shall designate by signed instrument shall act as special trustee as to that property. Any special trustee may resign at any time by giving written notice to the principal trustee. The special trustee shall have the powers granted to the principal trustee under this instrument, to be exercised with the approval of the principal trustee. Net income and any proceeds of sale shall be paid to the principal trustee, to be administered under this instrument. The principal trustee may remove and replace the special trustee at any time.

9.7 Delegation to Co-Trustee. Any individual trustee may delegate any or all of that trustee's powers and duties to a co-trustee, except that no trustee shall be permitted to delegate any discretion with respect to the distribution of income or principal to a beneficiary. Any delegation may be for a definite or indefinite period and may be revoked by the delegating trustee. Any delegation or revocation shall be in writing, signed by the delegating trustee, and delivered to the co-trustee to whom the delegation is made. Any person or institution may rely on the written

6

certification of a co-trustee that the co-trustee has the power to act without concurrence of any other trustee; provided, however, that the co-trustee shall attach to the written certification a copy of the instrument by which the powers and duties have been delegated.

9.8 Compensation. The trustee shall be entitled to reimbursement for expenses and to reasonable compensation.

9.9 Determinations by Trustee. The trustee's reasonable determination of any question of fact shall bind all persons.

9.10 Third-Party Dealings. The trustee's certification that the trustee is acting according to this instrument shall protect anyone dealing with the trustee. No one need see to the application of money paid or property delivered to the trustee.

9.11 Exoneration of Trustee. Any individual trustee acting in good faith shall not be liable for any act or omission. No trustee shall be liable for any act or omission of another trustee.

9.12 Bond. No trustee need give bond to, qualify before, or account to any court.

9.13 Powers of Successor Trustee. Unless expressly limited, each successor trustee shall have all the titles, powers, duties, discretions, and immunities of the original trustee.

## Article 10
## Trustee Powers

In addition to all powers granted by law, the trustee shall have the following powers, to be exercised in a fiduciary capacity:

10.1 Retention. To retain any property transferred to the trustee, regardless of diversification and regardless of whether the property would be considered a proper trust investment;

10.2 Sale. To sell at public or private sale, contract to sell, grant options to buy, convey, transfer, exchange, or partition any real or personal property of the trust for such price and on such terms as the trustee sees fit;

10.3 Real and Tangible Personal Property. To make leases and subleases and grant options to lease, although the terms thereof commence in the future or extend beyond the termination of any trust; to purchase, operate, maintain, improve, rehabilitate, alter, demolish, abandon, release, or dedicate any real or tangible personal property; and to develop or subdivide real property, grant easements, and take any other action with respect to real or tangible personal property that an individual owner thereof could take;

10.4 Borrowing. To borrow money from any lender, extend or renew any existing indebtedness; and mortgage or pledge any property in the trust;

10.5 Investing. To invest in bonds, common or preferred stocks, notes, options, common trust funds, mutual funds, shares of any investment company or trust, or other securities, life insurance, partnership interests, general or limited, limited liability company interests, joint

ventures, real estate, or other property of any kind, regardless of diversification and regardless of whether the property would be considered a proper trust investment;

10.6 Joint Investments; Distribution; Determination of Value. To make joint investments for two or more trusts held by the same trustee; to distribute property in cash or in kind, or partly in each; and to allocate or distribute undivided interests, different property, or disproportionate interests to the beneficiaries, and to determine the value of any property so allocated or distributed; but no adjustment shall be made to compensate for a disproportionate allocation of unrealized gain for federal income tax purposes, and no action taken by the trustee pursuant to this paragraph shall be subject to question by any beneficiary;

10.7 Rights as to Securities. To have all the rights, powers, and privileges of an owner of the securities held in trust, including, but not limited to, the powers to vote, give proxies, and pay assessments and to participate in voting trusts, pooling agreements, foreclosures, reorganizations, consolidations, mergers, and liquidations and, incident to such participation, to exercise or sell stock subscription or conversion rights;

10.8 Conservation of Assets. To take any action that an individual owner of an asset could take to conserve or realize the value of the asset and with respect to any foreclosure, reorganization, or other change with respect to the asset;

10.9 Delegation. To employ agents, attorneys, and proxies of all types (including any firm in which a relative of mine or his or her spouse is a partner, associate, or employee or is otherwise affiliated) and to delegate to them any powers the trustee considers advisable;

10.10 Payment of Expenses and Taxes. To pay all expenses incurred in the administration of the trust and to pay all taxes imposed on the trust;

10.11 Determination of Principal and Income. To determine in cases not covered by statute the allocation of receipts and disbursements between income and principal, except that (a) if the trust is beneficiary or owner of an individual account in any employee benefit plan or individual retirement plan, income earned after death in the account shall be income of the trust, and if the trustee is required to pay all trust income to a beneficiary, the trustee shall collect and pay the income of the account to the beneficiary at least quarterly (and to the extent that all income cannot be collected from the account, the deficiency shall be paid from the principal of the trust); (b) reasonable reserves for depreciation, depletion, and obsolescence may be established out of income and credited to principal only to the extent that the trustee determines that readily marketable assets in the principal of the trust will be insufficient for any renovation, major repair, improvement, or replacement of trust property that the trustee deems advisable; and (c) any premium paid for interest-bearing debt obligations shall be amortized as an income expense;

10.12 Dealings with Fiduciaries. To deal with, purchase assets from, or make loans to the fiduciary of any trust made by me or a trust or estate in which any beneficiary under this trust has an interest, even though a trustee under this instrument is the fiduciary, and to retain any assets or loans so acquired, regardless of diversification and regardless of whether the property would be considered a proper trust investment; to deal with a corporate trustee under this instrument individually or a parent or affiliate company; and to deal with the fiduciary of any other estate, trust, or custodial account even though the fiduciary is a trustee under this instrument;

10.13 Compromising Claims. To litigate, compromise, settle, or abandon any claim or demand in favor of or against the trust;

10.14 Nominee Arrangements. To hold any asset in the name of a nominee, in bearer form or otherwise, without disclosure of any fiduciary relationship;

10.15 Elections Under Retirement Plans. To elect, pursuant to the terms of any employee benefit plan, individual retirement plan, or insurance contract, the mode of distribution of the proceeds thereof, or change the beneficial ownership, and no adjustment shall be made in the interests of the beneficiaries to compensate for the effect of the election or change;

10.16 Liability Insurance. To purchase liability and casualty insurance of any kind for the protection of the trust estate, including comprehensive liability insurance;

10.17 Accepting Additional Property. To accept additional property from any source and administer it as a part of the trust and, if the addition is made by a will, to accept the statement of the personal representative of the estate of the transferor that the property delivered to the trustee constitutes all of the property to which the trustee is entitled without any duty to inquire into the representative's administration or accounting;

10.18 Environmental Matters. To inspect and monitor businesses and real property (whether held directly or through a partnership, corporation, trust, or other entity) for environmental conditions or possible violations of environmental laws; to remediate environmentally damaged property or to take steps to prevent environmental damage in the future, even if no action by public or private parties is currently pending or threatened; to abandon or refuse to accept property that may have environmental damage; and to expend trust property to do the foregoing; and no action or failure to act by the trustee pursuant to this paragraph shall be subject to question by any beneficiary;

10.19 Qualified Conservation Easements. To create, on land meeting the requirements of Code §2031(c)(8)(A), a qualified conservation easement, as defined in Code §2031(c)(8)(B), with or without the consent of any beneficiary, and to make the election provided in Code §2031(c)(6); and

10.20 Ability To Take Other Actions. To do all other acts to accomplish the proper management, investment, and distribution of the trust.

## Article 11
## Administrative Provisions

11.1 Administration After My Death. After my death, the trustee may hold the Lifetime Trust as a separate trust until all payments, allocations, and distributions from the Lifetime Trust directed by this instrument have been completed. If the Lifetime Trust is held as a separate trust under the preceding sentence, the trustee may from time to time distribute income or principal in satisfaction of the succeeding trusts, distributive shares, or gifts and shall (a) distribute the Lifetime Trust in complete satisfaction of such trusts, shares, or gifts as soon as practicable after

9

my death and (b) distribute at least annually income attributable to any gift with respect to which a federal estate tax marital deduction is allowable in my estate.

11.2 Income Payments. Mandatory income payments shall be made at least quarterly.

11.3 Standard for Discretionary Payments. In the exercise of discretion to make a payment to a beneficiary, the trustee may consider all income and resources known to the trustee to be available to the beneficiary and the standard of living of the beneficiary.

11.4 Exercise of Power of Appointment. A lifetime power of appointment granted under this instrument may be exercised only by written instrument specifically referring to the power. A testamentary power of appointment granted under this instrument may be exercised only by a will specifically referring to the power. The appointment may be either outright or subject to such trusts and conditions as the holder of the power designates. The holder of the power may grant to any person to whom principal may be appointed further powers of appointment. In determining whether a testamentary power of appointment has been exercised, the trustee may rely on an instrument admitted to probate in any jurisdiction as the will of the holder of the power, or may assume the power of appointment was not exercised in the absence of actual notice of the holder's will within three months after the holder's death.

11.5 Discretionary Qualified Terminable Interest Property Election. The trustee may elect (and may direct my executor to elect) to treat any fraction or all of the Marital Trust as qualified terminable interest property for federal estate tax purposes.

11.6 Marital Deduction Qualification. I intend the Marital Trust to qualify for the federal estate tax marital deduction to the extent a qualifying election is made, and the provisions of this instrument shall be so construed. To the extent a provision of this instrument would result in the Marital Trust not so qualifying, that provision shall be ineffective. Despite anything to the contrary, if my spouse directs in writing, the trustee of the Marital Trust shall convert unproductive property into property that produces a reasonable rate of income.

11.7 Effect of Disclaimer of Marital Trust. To the extent the Marital Trust is disclaimed by or on behalf of my spouse, the disclaimed portion shall be held as a Disclaimer Trust and administered under the same terms as the Family Trust, except that my spouse shall have no power of appointment over the Disclaimer Trust.

11.8 Marital Trust Death Taxes. Unless my spouse directs otherwise by will or revocable trust specifically referring to this instrument, after the death of my spouse the trustee shall pay from the portion of the Marital Trust included in my spouse's gross estate its proportionate share of the aggregate amount by which the death taxes in my spouse's estate are increased as a result of the inclusion in my spouse's taxable estate of the Marital Trust and any other trust that has qualified for the federal gift or estate tax marital deduction (the "Marital Trust death taxes").

11.9 No Advancements. No payment made to any beneficiary under this instrument shall be treated as an advancement.

11.10 Allocation of Assets and Income. For purposes of funding any pecuniary gifts (including any pecuniary formula gifts), the trustee may allocate or distribute assets in any

manner, but the trustee shall value each asset at its fair market value on the date on which the asset is allocated or distributed. Any pecuniary gift (including any pecuniary formula gift) in trust or to my spouse shall include a pro rata share of the income of the trust estate from the date of my death to the date or dates of allocation or distribution.

11.11 Small Trust Termination. The trustee may terminate any trust with a value at the time of termination less than the Minimum Trust Value. This power may not be exercised by a trustee who is a beneficiary of the trust. The Minimum Trust Value shall be the sum of (a) $100,000 and (b) the percentage increase, if any, in the cost of living from January 1 of the year in which I executed this instrument until January 1 of the year of termination multiplied by $100,000. For this purpose, the increase in the cost of living shall be determined pursuant to the Consumer Price Index for Urban Wage Earners and Clerical Workers, U.S. City Average, All Items, as published by the Bureau of Labor Statistics of the U.S. Department of Labor. If that index ceases to be published, there shall be substituted any other index the trustee determines to reflect similar information. Distribution under this paragraph shall be to the income beneficiaries in the proportions in which they are entitled to share the income or, if their interests are indefinite, to the income beneficiaries in equal shares.

11.12 No Rule Against Perpetuities. I intend that each trust established under this instrument shall be a Qualified Perpetual Trust under Illinois law and shall not be subject to the Rule Against Perpetuities. The power of the trustee to sell, lease, or mortgage assets shall be construed as enabling the trustee to sell, lease, or mortgage trust property for any period beyond the Rule Against Perpetuities. If assets that would not qualify as part of a Qualified Perpetual Trust would otherwise be added to any trust established under this instrument, the trustee shall segregate those assets and administer them as a separate trust identical to the one to which the assets would have been added, except that, despite any other provision, 21 years after the death of the last to die of all of the beneficiaries living at my death each such separate trust then held under this instrument shall be distributed to the income beneficiaries in the proportions in which they are entitled to share the income or, if their interests are indefinite, to the income beneficiaries in equal shares.

11.13 Facility of Payment. The trustee may make any payments (other than distributions on termination) to a beneficiary under legal disability or whom the trustee determines to be unable to properly manage his or her affairs in any of the following ways: (a) to the legally appointed guardian of the beneficiary, (b) to an adult relative or friend of the beneficiary in reimbursement for proper expenditures on behalf of the beneficiary, (c) to a custodian for the beneficiary under a Uniform Transfers or Gifts to Minors Act, (d) by making direct expenditures for the benefit of the beneficiary, or (e) to the beneficiary directly. The trustee may make distributions of tangible personal property to a beneficiary under legal disability or whom the trustee determines to be unable to properly manage his or her affairs in any of the ways listed in (a), (c), or (e) above.

11.14 Spendthrift. No interest under this instrument shall be assignable by any beneficiary or be subject to the claims of his or her creditors, including claims for alimony or separate maintenance. The preceding sentence shall not be construed as restricting in any way the exercise of any right of withdrawal or power of appointment or the ability of any beneficiary to release his or her interest.

11.15 Consolidation and Division of Trusts. The trustee may at any time consolidate any trust held under this instrument with any other trust if the beneficiaries of the trusts are the same

and the terms of the trusts are substantially similar. Further, the trustee, in the trustee's absolute discretion, may divide a trust (the "initial trust") into two or more separate trusts and may segregate an addition to a trust (the "initial trust") as a separate trust.

    (a) Funding. In dividing the initial trust, if the division is to be effective as of my death or as of the death of any other person, the trustee shall fund each separate trust with property having an aggregate fair market value fairly representative of the appreciation or depreciation in value from the date of such death to the date of division of all property subject to the division.

    (b) Terms. A trust created pursuant to this paragraph shall have the same terms and conditions as the initial trust, and any reference to the initial trust in this instrument shall refer to the trust. The rights of beneficiaries shall be determined as if the trust and the initial trust were aggregated, but (1) different tax elections may be made as to the trusts, (2) disproportionate discretionary distributions may be made from the trusts, (3) taxes may be paid disproportionately from the trusts, (4) upon termination the share of a remainder beneficiary (including any recipient trust) may be satisfied with disproportionate distributions from the trusts, and (5) a beneficiary of the trusts may disclaim an interest in one of the trusts without having to disclaim an interest in another trust. In administering, investing, and distributing the assets of the trusts and in making tax elections, the trustee may consider differences in federal tax attributes and all other factors the trustee believes pertinent.

    11.16 Accrued and Unpaid Income. On the death of any beneficiary, any accrued or unpaid income shall be paid as income to the next beneficiary succeeding in interest.

    11.17 Controlling Law. The validity and effect of each trust and the construction of this instrument and of each trust shall be determined in accordance with the laws of Illinois. The original situs and original place of administration of each trust shall also be Illinois, but the situs and place of administration of any trust may be transferred at any time to any place the trustee determines to be for the best interests of the trust.

    11.18 Life Insurance. I retain during my life all rights under insurance policies payable to the trustee, including the right to change the beneficiaries and to assign any policies to any lender, including any trustee, as security for any loan. During my life the trustee shall have no responsibility with respect to the policies for the payment of premiums or otherwise. After my death, the trustee shall take whatever action the trustee considers best to collect the proceeds of any policies then payable to the trustee, but the trustee need not incur expense or take legal proceedings unless indemnified. Payment to and the receipt of the trustee shall be a full discharge of the liability of any insurance company, which need not take notice of this instrument or see to the application of any payment.

    11.19 Exclusion of Interested Trustee. Notwithstanding any other provision, an individual trustee other than me (a) shall have no incident of ownership or power or discretion with respect to any policy of insurance on the trustee's life; (b) shall have no discretionary power to allocate or distribute assets to the extent that such would discharge the trustee's legal obligation to support any beneficiary; (c) shall, if the trustee has a beneficial interest in a trust, have no discretionary power to allocate or distribute assets of such trust, directly or indirectly, to or for any beneficiary (including the trustee), unless necessary for such beneficiary's maintenance in reasonable comfort, health care, or education (to the extent the trustee was otherwise granted such

discretionary powers); and (d) shall have no other power or discretion that would be deemed a general power of appointment under Code §2041 unless the trustee has the power in other than a fiduciary capacity.

## Article 12
## Payment of Death Taxes, Expenses, and Debts

12.1 Payments. After my death, the trustee shall make the following payments:

(a) Death Taxes. All of my death taxes.

(b) Expenses. All expenses of my last illness, funeral, and burial; costs of safeguarding and delivering tangible personal property; and estate administration expenses.

(c) Debts. All of my debts, other than debts secured by life insurance, by an interest in a land trust or cooperative, or by real property.

12.2 Source of Payments Generally. The trustee shall make all payments required under this Article from the principal of the Lifetime Trust remaining after distribution of any gifts of tangible personal property or gifts of specific sums of money (including any pecuniary formula gifts), in trust or otherwise. If the cash and readily marketable assets in the Lifetime Trust are insufficient to make the foregoing payments in full, the trustee shall notify the executor of my estate of the amount of insufficiency and request payment. Notwithstanding the preceding two sentences:

(a) The trustee shall pay from the disclaimed assets the amount by which my death taxes are increased by reason of a disclaimer of any portion of the Marital Trust;

(b) The trustee shall pay from the nonqualified assets of the Marital Trust the amount by which my death taxes are increased by reason of an election to qualify less than all of the Marital Trust as qualified terminable interest property; and

(c) The trustee shall pay from the disclaimed assets all generation-skipping transfer taxes on direct skips of which I am the transferor occurring at my death as a result of a disclaimer.

12.3 Apportionment and Reimbursement for Death Taxes and Expenses. I do not waive any rights the trustee has under Code §§2206, 2207, 2207A, and 2207B or any similar statutes of any state (or any comparable provisions in effect on my death), and I authorize the trustee to take such actions as are necessary to obtain reimbursement under such Code sections and statutes, including withholding distributions. I waive all other rights to reimbursement and apportionment.

12.4 Tax Elections. The trustee may make elections under tax laws and employee benefit plans and may make allocations of any available GST exemption as the trustee deems advisable. No adjustment shall be made between principal and income or in the relative interests of the beneficiaries to compensate for any such election or allocation.

12.5 Retirement Assets. Notwithstanding anything herein to the contrary, no payment of taxes of any kind, or payment of debts or expenses of administration shall be made from any Retirement Assets, or the proceeds of such account or plan, for any such taxes, debts or expenses

13

of administration if such payment would cause the Trust or any such plan or account to be considered to have a beneficiary other than a qualified Designated Beneficiary under IRS Section 401(a)(9)(E) for purposes of determining required minimum distributions under IRC Section 401(a)(9)(A)(ii) and the Regulations thereunder.

## Article 13
## Definitions

13.1 Balance of the Trust Estate. The "balance of the trust estate" means the principal of the Lifetime Trust (including assets received from my probate estate or any other source) reduced by any payments of expenses, debts, and death taxes required to be paid from the Lifetime Trust and any gifts of specific assets and any pecuniary gifts (including any pecuniary formula gifts).

13.2 Child and Descendant.

(a) Child. A "child" of a person means only (1) a child born to the person or to the person's spouse while they are lawfully married; (2) a natural child of the person born while the parents are not lawfully married if the parents subsequently become lawfully married, but only for purposes of any allocation or distribution made after that marriage; (3) a child lawfully adopted by the person prior to that child's attaining age 21; or (4) a natural child of that person if that person is a female.

(b) Descendant. A child of a person is a "descendant" of that person and of all ancestors of that person. A person's descendants include all such descendants whenever born. Except when distribution or allocation is directed to descendants *per stirpes*, the word "descendants" includes descendants of every degree whether or not a parent or more remote ancestor of a descendant is also living.

(c) Child in Gestation. A child in gestation on the date any allocation or distribution is to be made shall be deemed to be living on that date if the child is subsequently born alive and lives for at least 90 days.

13.3 Code. References to sections of the "Code" refer to the Internal Revenue Code of 1986, as amended from time to time, and include corresponding provisions of subsequent federal tax laws.

13.4 Death Taxes. "Death taxes" includes all estate, transfer, inheritance, and other succession taxes (including penalties and interest) imposed by reason of death. "Death taxes" shall not include generation-skipping transfer taxes imposed on any generation-skipping transfers other than direct skips made at the decedent's death of which the decedent is the transferor.

13.5 Education. "Education" means a preschool, grade school, middle school, high school, college, university, and professional or postgraduate education, any vocational studies or training, reasonable related living expenses, and reasonable travel expenses to and from the educational institution.

13.6 Incapacity. A person (other than me) shall be considered incapacitated if under a legal disability or unable to give prompt and intelligent consideration to financial affairs. The existence

14

of the inability may be determined by a physician, and any person may rely on written notice of the determination. A person already acting as trustee shall cease to act on incapacity.

13.7 Income Beneficiary. An "income beneficiary" means a person to whom or for whose benefit income of any trust is or may be currently distributed.

13.8 *Per Stirpes*. Whenever assets are to be allocated for or distributed to the descendants of a person "*per stirpes*," those assets shall be divided into equal shares, one such share for each then living child of that person and one such share for each deceased child of that person who has a descendant then living. Any such deceased child's share shall then be allocated for or distributed to that child's descendants *per stirpes* in accordance with the preceding sentence and this sentence.

13.9 Qualified Corporation. A "qualified corporation" means any bank, trust company, or other corporate entity that is authorized to act as trustee and that is not a related or subordinate party under Code §672(c) as to any beneficiary under this instrument.

13.10 Spouse. The "spouse" of any person, other than me, means the individual legally married to, and not legally separated from, that person on the date of the distribution then in question or on the date of the prior death of that person.

13.11 Tax-Sheltered Gift. "Tax-sheltered gift" means:

(a) Any assets that cannot qualify for the federal estate tax marital deduction and that are not disposed of otherwise; and

(b) After giving effect to (a), the largest pecuniary amount that results in no, or the least possible, federal estate tax payable by reason of my death.

In determining the tax-sheltered gift, the trustee shall (a) consider any tax referred to in Code §2001(b)(2); (b) consider the applicable credit amount allowable to my estate, any deduction from my estate allowed under Code §2057, and the state death tax credit allowable to my estate (but only to the extent its use would not increase state death taxes), but no other credit; (c) consider my adjusted taxable gifts; (d) consider property passing outside this trust that is includible in my gross estate and does not qualify for the marital or charitable deduction; (e) consider other gifts under this trust that do not qualify for the marital or charitable deduction; (f) consider charges to principal that are not allowed as deductions in computing my federal estate tax; (g) assume that none of the Family Trust qualifies for the federal estate tax marital deduction; and (h) assume that all of the Marital Trust (including any part disclaimed) qualifies for the federal estate tax marital deduction. I recognize that the tax-sheltered gift may be zero, may be reduced by certain state death taxes, and may be affected by any election not to deduct administration expenses for federal estate tax purposes.

### Article 16
### Spouse's Occupancy of Residential Property in Trust

The provisions of this Article shall apply if any interest in property that was used by my spouse and me as a residence at the time of my death ("the residence") is allocated to a trust

15

my spouse pays expenses as required by the preceding two sentences of this paragraph, the trustee shall not sell the residence except as provided in the following paragraph.

16.2 Sale and Purchase of Residence. Upon my spouse's written request, the trustee shall sell all or any part of the residence for its fair market value and shall retain the proceeds of the sale as principal. Upon my spouse's written request, the trustee shall purchase or construct any new residence my spouse shall request out of the proceeds of any sale under this paragraph and shall thereafter hold the new residence as "the residence" subject to the provisions of this Article. My spouse may at any time purchase the residence from the trustee for its fair market value, determined as of the date my spouse delivers to the trustee a written purchase offer.

16.3 Trustee's Liability. No trustee shall be accountable for any loss sustained by reason of any action taken or omitted pursuant to this Article, and the powers granted under this Article shall be exercised only in a fiduciary capacity.

Article 17
Captions and Context of Terms

Captions shall have no impact or meaning as to the terms of this instrument. Singular and plural and masculine, feminine, and neuter shall be interchangeable as required or permitted in the context of this instrument.

Signed and agreed on June 27, 2002.

*Violet E. Pfeiffer*
_____
VIOLET E. PFEIFFER, individually and as trustee

STATE OF ILLINOIS )
) ss.
COUNTY OF MCHENRY )

On June 7, 2002, **VIOLET E. PFEIFFER** personally appeared before me and acknowledged that this instrument was executed as that person's free act and deed.

_____
Notary Public

This document was prepared by: John J. Horeled, Esq
651 W. Terra Cotta Ave. #224
Crystal Lake, IL 60014

"OFFICIAL SEAL"
JOHN J. HORELED
Notary Public, State of Illinois
My Commission Expires 12/12/04

17