UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

THE NORTHWESTERN MUTUAL LIFE
INSURANCE COMPANY,

        Plaintiff,

v.

MAGDALENA PRZEWOZNIAK,
PATRICK PFEIFFER, individually and
as Trustee of the Herbert H. Pfeiffer
Trust, CHARLOTTE OLSON,
individually and as Trustee of the Violet
Pfeiffer Trust, MAPLE PROFANT f/k/a
NANCY DAUGHERTY, and LYNN
PFEIFFER,

        Defendants.

No. 19-cv-05848
Judge Franklin U. Valderrama

**MEMORANDUM OPINION AND ORDER**

    Plaintiff Northwestern Mutual Life Insurance Company (Northwestern

Mutual) brings this interpleader action against Defendants Magdalena Przewozniak

(Przewozniak) and Patrick Pfeiffer, Charlotte Olson, Maple Profant f/k/a Nancy

Daugherty, and Lynn Pfeiffer (collectively, the Pfeiffer Ddefendants) to resolve

competing claims to a Northwestern Mutual life insurance policy insuring the life of

Herbert Pfeiffer. Przewozniak and the Pfeiffer Defendants answered the complaint

and filed cross-claims against each other. R. 10, 12.[1] Before the Court are the parties'

---

[1]Citations to the docket are indicated by "R." followed by the docket number or filing name,
and, where necessary, a page or paragraph citation.

cross-motions for summary judgment pursuant to Federal Rule of Civil Procedure 56(a). R. 48, 51.

For the following reasons, Przewozniak's motion [48] is denied and the Pfeiffer Defendants' motion [51] is granted. The Court awards to the Pfeiffer Defendants all sums placed on deposit with the Court in this action, plus any accrued interest. *See* R. 9 (Registry Deposit Information Form indicating $120,605.35 deposited as interpleader funds pursuant to 28 U.S.C. § 1335). The cash bond posted by Northwestern Mutual Life Insurance Company, plus any accrued interest, is hereby released to counsel for the Pfeiffer Defendants, Kevin J. Todd of Hoogendoorn & Talbot LLP. The Clerk of the Court is directed to send the cash bond previously deposited with the Clerk of the Court, plus any accrued interest, by check made out to Kevin J. Todd, to Hoogendoorn & Talbot LLP, 122 South Michigan Avenue, Suite 1220, Chicago, IL 60603.

## Background[2]

According to Przewozniak, "[t]o date, no written or oral discovery has been conducted in the case." R. 49, Przewozniak Memo at 2. Notwithstanding, the following material facts are undisputed unless otherwise noted. On summary judgment, the

---

[2]This factual background is taken from the parties' Rule 56.1 statements of facts and responses, including Przewozniak's Statement of Facts (R. 50), the Pfeiffer Defendants' Response to Przewozniak's Statement of Facts (R. 54 at 1–7), the Pfeiffer Defendants' Statement of Additional Facts (R. 54 at 8–10), Przewozniak's Response to the Pfeiffer Defendants' Statement of Additional Facts (R. 61), the Pfeiffer Defendants' Statement of Facts (R. 53), and Przewozniak's Response to the Pfeiffer Defendants' Statement of Facts (R. 56). The Court notes that in place of a Statement of Additional Facts, Przewozniak incorporated her own Statement of Facts. R. 56 at 12 (incorporating R. 50). In response, the Pfeiffer Defendants incorporated their Response to Przewozniak's Statement of Facts. R. 59 (incorporating R. 54).

Court assumes the truth of those facts but does not vouch for them. *Arroyo v. Volvo Grp. N. Am., LLC*, 805 F.3d 278, 281 (7th Cir. 2015).

### A. Undisputed Facts Regarding the Life Insurance Policy and the Violet Pfeiffer Trust

Herbert Pfeiffer (Herbert) married his wife, Violet Pfeiffer (Violet), in 1959 and they lived together continuously as husband and wife until Violet's death on December 17, 2007. R. 56 ¶ 27. On or about August 24, 1959, Herbert applied for life insurance coverage from Northwestern Mutual, which subsequently issued life insurance policy number x6078 (the Policy). *Id.* ¶¶ 17–18. Herbert was both the insured and the owner of the Policy. *Id.* ¶ 18. Violet was listed as the primary beneficiary, and Herbert's sons Patrick Pfeiffer (Patrick) and Michael Pfeiffer (Michael), along with any other children, were listed as contingent beneficiaries. *Id.* ¶ 19. On or about March 15, 1998, Herbert executed a Designation of Beneficiary form, naming Violet as the primary beneficiary and Patrick, Michael, Lynn Pfeiffer, Nancy Daugherty (now known as Maple Profant), and Charlotte Olson as contingent beneficiaries.[3] *Id.* ¶ 20.

On June 27, 2002, Violet executed a trust known as the Violet E. Pfeiffer Trust (Violet Trust), which created the Marital Trust and Family Trust. R. 56 ¶¶ 28–29. Pursuant to Articles 4 and 5 of the Violet Trust, upon Violet's death, Herbert was to become the sole beneficiary of the Marital Trust and the Family Trust. *Id.* ¶ 29. The

---

[3]Patrick Pfeiffer, Michael Pfeiffer, and Lynn Pfeiffer are Herbert's children. Charlotte Olson and Maple Profant f/k/a Nancy Daugherty are Violet's children. R. 56 ¶ 30. Michael Pfeiffer predeceased Herbert on November 14, 2008, leaving no surviving spouse or descendants. *Id.* ¶ 31.

Marital Trust and the Family Trust provided that the trustee should pay to Herbert the income from the two trusts, as well as discretionary payments of principal from the two trusts that the trustee considered necessary for Herbert's health or maintenance in reasonable comfort. *Id.* Articles 4 and 5 also provided that upon Herbert's death, the Marital Trust and the Family Trust were to be terminated and the assets of both trusts were to be distributed to Violet's children and Herbert's children. *Id.* ¶ 30. Herbert became the beneficiary of the Marital Trust and Family Trust upon Violet's death, as well as successor trustee of the Violet Trust pursuant to Section 8.1. *Id.* ¶ 34.

Section 11.19 of the Violet Trust, titled "Exclusion of Interested Trustee," states:

> *Notwithstanding any other provision, an individual trustee other than me (a) shall have no incident of ownership or power or discretion with respect to any policy of insurance on the trustee's life*; (b) shall have no discretionary power to allocate or distribute assets to the extent that such would discharge the trustee's legal obligation to support any beneficiary; (c) shall, if the trustee has a beneficial interest in a trust, have no discretionary power to allocate or distribute assets of such trust, directly or indirectly, to or for any beneficiary (including the trustee), unless necessary for such beneficiary's maintenance in reasonable comfort, health care, or education (to the extent the trustee was otherwise granted such discretionary powers); and (d) shall have no other power or discretion that would be deemed a general power of appointment under Code §2041 unless the trustee has the power in other than a fiduciary capacity.

R. 56 ¶ 35 (emphasis added).

## B. Disputed Facts Regarding Transfer of the Policy into the Violet Pfeiffer Trust

According to the Pfeiffer Defendants, on or about January 6, 2003, Herbert signed an Owner Designation form, naming Violet as the owner of the Policy and the

Violet Trust as owner in the event Violet predeceased Herbert. R. 53 ¶ 21. They also contend that on or about March 7, 2005, Herbert, as attorney in fact for Violet, executed a Designation of Beneficiary form naming Violet as the primary beneficiary and the Violet Trust as the contingent beneficiary. *Id.* ¶ 22. Accordingly, they maintain that at the time of Violet's death on December 17, 2007, the Violet Trust both became the owner and was the beneficiary of the Policy. *Id.* ¶ 32.

In response to these statements of facts, Przewozniak asserts that she does not have sufficient information to admit or deny them, and "would request that prior to ruling on [the Pfeiffer Defendants'] motion for summary judgment Northwestern Mutual produce the insurance file at issue in this case." R. 56 ¶¶ 21–22, 32 ("This request is supported by the Affidavit of Magdalena Przewozniak attached as Exhibit A."); *see* R. 56-1 (Exhibit A – Affidavit of Przewozniak) ("To date, there has been no discovery conducted in this case. . . . Other than the documents attached, I have not reviewed the insurance policy or any of the other documents or designations contained in Northwestern Mutual's insurance file for the time period prior to 2013.").

The Pfeiffer Defendants also maintain that the Violet Trust became irrevocable upon Violet's death, pursuant to Section 2.1 of the Violet Trust. R. 54 ¶ 6. Przewozniak disputes that asserted fact, stating, "Section 2.1 of the Violet Trust gives the settlor certain rights to amend or revoke. It does not provide that after her death the Violet Trust 'could not be amended or changed in any way.'" R. 61 ¶ 6 (citing nothing else in the record).

5

Violet died on December 17, 2007. R. 56 ¶ 27. The Pfeiffer Defendants contend that on or about May 27, 2008 Herbert then executed a Designation of Beneficiary Form naming the successor trustee of the Herbert Pfeiffer trust as the primary beneficiary of the Policy. But Herbert, assert the Pfeiffer Defendants, had no authority to do so pursuant to the terms of the Violet Trust. R. 53 ¶ 24; R. 55, Pfeiffer Response at 3. Przewozniak again neither admits nor denies those facts, because she has not reviewed the insurance policy documents. R. 56 ¶ 24.

### C.      Herbert's Intended Change of the Policy's Beneficiary

On or about December 16, 2013, Herbert executed: (1) a Trustee Declaration of Authority to Purchase and Own Life Insurance; (2) a Designation of Owner form, naming himself as the individual owner of the Policy; and (3) a Designation of Beneficiary form naming Przewozniak as the primary beneficiary of the Policy and the successor trustee of the Herbert Pfeiffer Trust as the contingent beneficiary. R. 56 ¶ 25. The Pfeiffer Defendants admit that Herbert executed these documents and thus intended to change the primary beneficiary of the Policy to Przewozniak. Presumably, Herbert was motivated to make Przewozniak the beneficiary based upon the paid caregiver services she provided to him between March 2007 and May 2018. R. 54 ¶ 8–9. Herbert died on February 2, 2019, causing approximately $116,000 in death benefits to become payable to the Policy's beneficiary. R. 56 ¶ 26.

On August 30, 2019, Northwestern Mutual filed this interpleader action to resolve competing claims between the Pfeiffer Defendants and Przewozniak to the death benefit proceeds from the Policy. R. 1. Northwestern Mutual subsequently filed

a motion pursuant to Federal Rule of Civil Procedure 67 to deposit the relevant funds with the Court, which was granted, and deposited the death benefit, plus interest, with the Court. The Pfeiffer Defendants filed an answer to the complaint and a cross-claim against Przewozniak, who filed her own answer and cross-claim against the Pfeiffer Defendants on November 12, 2019.[4]

The Pfeiffer Defendants then filed a motion for summary judgment on March 6, 2020, and Przewozniak filed a motion for summary judgment on June 23, 2020. The case was thereafter reassigned to this Court on September 28, 2020. The Court struck the pending motions for summary judgment on March 29, 2021 due to the parties' failure to comply with Local Rule 56.1. The parties subsequently re-filed their cross-motions for summary judgment.

## Legal Standard

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment has the initial burden of showing that there is no genuine dispute and that they are entitled

---

[4]According to Przewozniak: "[A]t the initial status of this case, there was a discussion with counsel for Northwestern that they would provide its file for the insurance policy in question. All counsel agreed that serving formal discovery was not necessary as it would just increase the cost for Northwestern. As a courtesy to Northwestern, no formal discovery was issued, but on June 2, 2020, counsel for Magdalena corresponded with counsel for Northwestern asking about the status of the production of the file material. Counsel agreed to produce the file material but only if the parties agreed to dismiss them with prejudice from the lawsuit. The dismissal order proposed by Northwestern was very broad because is [sic] dismissed with prejudice any other claims Magdalena might have against Northwestern. Counsel for Magdalena was not comfortable with the broad scope of the release and therefore requested that the release be narrowed to just the interpleader action." R. 60, Przewozniak Reply at 4–5.

to judgment as a matter of law. *Carmichael v. Village of Palatine*, 605 F.3d 451, 460 (7th Cir. 2010); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Wheeler v. Lawson*, 539 F.3d 629, 634 (7th Cir. 2008). If this burden is met, the adverse party must then "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. In evaluating summary judgment motions, courts must view the facts and draw reasonable inferences in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). The Court may not weigh conflicting evidence or make credibility determinations, *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 704 (7th Cir. 2011), and must consider only evidence that can "be presented in a form that would be admissible in evidence," Fed. R. Civ. P. 56(c)(2).

## Analysis

The Pfeiffer Defendants' motion for summary judgment admits all of the facts relied on by Przewozniak, though they assert that the facts regarding Przewozniak's status as Herbert's caregiver are irrelevant. Both parties agree that on December 16, 2013 Herbert intentionally executed three documents (the Change-of-Beneficiary Forms) designating Przewozniak as the primary beneficiary of the Policy. First, the "Trustee Declaration of Authority to Purchase and Own Life Insurance" form indicates that (1) Herbert Pfeiffer is the sole Trustee of the Violet Trust, (2) the trust was executed on "6/27/2002," and (3) the trust was "IRREVOCABLE." R. 50-2. The

form was signed by Herbert on "12/16/2013" and "declares that the Trustee is authorized within the trust to purchase life insurance on the insured(s)." *Id.* Second, the "Owner Designation" form, which was signed by Herbert on "12/16/2013," indicates that Herbert is the insured and "THE INSURED WILL BE THE OWNER." R. 50-3. Third, the "Designation of Beneficiaries by Owner for Death Proceeds Only" form, which was also signed by Herbert on "12/16/2013," indicates that it (1) "revokes all prior beneficiary designations for death proceeds," (2) names Magdalena Przewozniak as the direct beneficiary, and (3) names the "Successor Trustee Under the Herbert H Pfeiffer Trust dated June 27, 2022" as the contingent beneficiary. R. 50-4.

Przewozniak's motion stops there, asserting that these documents lawfully made her the beneficiary of the Policy pursuant to Herbert's wishes. Indeed, her statement of facts does not rely on, or even substantively discuss, the Violet Trust. R. 50 (mentioning the Violet Trust only in paragraph 2, stating that "Charlotte Olson is a trustee and beneficiary of the Violet Pfeiffer Trust dated June 27, 2022 and is domiciled in Michigan and so is a citizen of Michigan."). Based on the Change-of-Beneficiary Forms alone, she claims that she is entitled to the Policy's death benefit. Przewozniak Memo at 5 (citing *Dooley v. James A. Dooley Assocs. Emps. Ret. Plan*, 442 N.E.2d 222, 227 (Ill. 1982) (For an insured to effect a beneficiary change, "[t]here

must be a combination of intent to make the change and positive action towards effecting that end.")).

The Pfeiffer Defendants, relying on the validity and terms of the Violet Trust, argue that Herbert lacked the legal authority to change the beneficiary of the Policy to Przewozniak. They contend that after Violet's death, the Policy was owned by the Violet Trust and Herbert was the sole trustee and a beneficiary of the trust. Because, they claim, the trust became irrevocable after Violet's death and Herbert became an interested trustee pursuant to the explicit terms of the Violet Trust, changes to the trust could not be made and Herbert was expressly precluded from changing the beneficiary of the Policy. R. 52, Pfeiffer Memo at 2, 7 (citing *Stuart v. Cont'l Illinois Nat. Bank & Tr. Co. of Chicago*, 369 N.E.2d 1262, 1271 (Ill. 1977) ("It is axiomatic that the limits of a trustee's powers are determined by the instrument which creates the trust[.]")).

The issue before the Court involves the interpretation of a trust.

The court's role in interpreting a trust is clear: "[t]he limits of a trustee's powers are determined by the plain and unambiguous language of the instrument creating the trust.... Moreover, the court's role is limited to establishing not what the settlor meant to say, but what was meant by what he did say."

*Metz v. Independent Trust Corp.*, 994 F.2d 395, 398 (7th Cir. 1993) (quoting *Dunker v. Reichman*, 841 F.2d 177, 180 (7th Cir.1988)).

Applying those principles, the Court agrees with the Pfeiffer Defendants' interpretation of the terms of the Violet Trust. First, the Violet Trust was irrevocable. Przewozniak disputes that fact, but in support she only cites to Section 2.1 of the

Violet Trust. R. 56 ¶ 33; *see* N.D. Ill Local R. 56.1(e)(3) ("To dispute an asserted fact, a party must cite specific evidentiary material that controverts the fact and must concisely explain how the cited material controverts the asserted fact."). Contrary to Przewozniak's assertion, Section 2.1 confirms the Pfeiffer Defendants' contention. It reads, in its entirety:

> Right To Amend or Revoke. I reserve the right from time to time to amend or revoke this instrument in whole or in part by instrument (other than my Will) signed by me, referring to this instrument, and delivered to the trustee *during my life*. If I revoke this instrument, the trustee shall deliver the trust estate to me or as I direct.

R. 53-1 at 62 (emphasis added). Section 2.1 does not provide for amendment *after* Violet's death. It is black letter law that a trust becomes irrevocable upon the death of the settlor. *See Citizens Bank & Trust Co. v. Commissioner*, 839 F.2d 1249, 1250 (7th Cir. 1988). Also, the Change-of-Beneficiary Forms submitted by Przewozniak in support of her motion undermine her dispute regarding revocability; the "Trustee Declaration of Authority to Purchase and Own Life Insurance" form signed by Herbert indicates that the trust was "IRREVOCABLE." R. 50-2. Accordingly, Przewozniak does not genuinely dispute the irrevocability of the Violet Trust.

Second, Section 11.19, titled "Exclusion of Interested Trustee," applied to Herbert after Violet's death and precluded him from making any change to the Policy's beneficiary. *See* R. 53-1 at 73 (Section 11.19 states in part, "Notwithstanding any other provision, an individual trustee other than me (a) shall have no incident of ownership or power or discretion with respect to any policy of insurance on the trustee's life[.]"). Przewozniak disagrees with that interpretation, arguing that the

term "any policy of insurance on the trustee's life" refers only to life insurance policies on Violet's life—not Herbert's. Przewozniak Memo at 5–6 ("Paragraph 11.19 is limited to 'any policy of insurance on the trustee's life.' The 'trustee's life' is Violet, not Herbert.").

In support of her interpretation, Przewozniak urges that Section 11.19 must be read in conjunction with Section 11.18, titled "Life Insurance," which provides in part:

> I [Violet] retain during my life all rights under insurance policies payable to the trustee, including the right to change the beneficiaries . . . During my life the trustee shall have no responsibility with respect to the policies for the payments of premiums or otherwise. After my death, the trustee shall take whatever action the trustee considers best to collect the proceeds of any policies then payable to the trustee[.]

R. 53-1 at 73; Przewozniak Memo at 5–6 (arguing that "Paragraph 11.18 applies to life insurance policies the proceeds of which *are payable to Violet.* Paragraph 11.18 does not control any life insurance policy in which the proceeds are payable to *Herbert.*") (emphasis in original). Przewozniak insists that "[w]hile the trust may indicate that Herbert could not make changes to any life insurance policy on Violet's life, the same is not true of any life insurance policy on Herbert's life." Przewozniak Memo at 6.[5]

The Pfeiffer Defendants counter that by its express terms Section 11.19 does not apply solely to life insurance policies on Violet's life. The Court agrees. None of

---

[5]In one sentence, Przewozniak also argues that as trustee of the Violet Trust, Herbert had absolute discretion under Article 4 to distribute the principal of the Martial Trust to himself which he considered "necessary for his health and maintenance." Przewozniak Memo at 7.

the language in Section 11.18 or Section 11.19, for that matter, limits their application to policies on Violet's life. As the Pfeiffer Defendants argue, Section 11.19 stands on its own by beginning with the phrase, "Notwithstanding any other provision[.]" R. 53-1 at 73. And by its plain words, the phrase "on the trustee's life" in Section 11.19 refers to the same "individual trustee other than me [Violet]" referenced earlier in the sentence. *Favata v. Favata*, 394 N.E.2d 443, 449 (Ill. App. Ct. 1979) ("Where as here, the language chosen by settlor is clear, the plain intention prevails over any presumed intention."). If the intent of the phrase "any policy of insurance on the trustee's life" was meant to refer only to the life of Violet—who was the trustee at the time the trust was created—the sentence could easily have been drafted to read, "any policy of insurance on *my* life." That construction would have permitted— indeed, required—Przewozniak's interpretation while maintaining the internal consistency of the term "trustee." But Przewozniak's interpretation of the actual text would require "trustee" to mean two different things in the same sentence. The Court rejects that proposed reading. Therefore, the Court finds that if the Policy was part of the Violet Trust, Herbert did not have the authority after Violet's death to change the beneficiary of the Policy.[6]

Still, the question remains whether the Policy was actually transferred into the Violet Trust. Przewozniak insists that the Pfeiffer Defendants' motion for

---

The argument is a non-starter. The death benefits at issue in this case cannot be considered "necessary for [Herbert's] health or maintenance," because by their very nature they could only be paid out after his death. *Id.*

[6]Przewozniak cursorily argues in two sentences that Section 11.19 "is very specific language that is commonly utilized" for tax purposes. Przewozniak Memo at 6. The Pfeiffer Defendants

summary judgment must be denied because discovery is needed to answer that question of fact. Przewozniak Memo at 7 ("[A]t the time Herbert changed the beneficiary to Magdalena there has been no sworn testimony or other evidence to suggest that Violet's Trust was the owner [of the Policy]."). While she neither denies nor admits that the Policy was owned by the Violet Trust, Przewozniak requests in the alternative that the Court "deny [both of] the [summary judgment] motions and order discovery to proceed" to find out. Przewozniak Memo at 2, 7; R. 57, Przewozniak Response at 2 ("The limited discovery requested would be the insurance policy file containing the policy itself as well as the designations and documents from prior to 2013."); *see* R. 50-5 (Affidavit of Przewozniak) ¶ 5.

The Pfeiffer Defendants advance several arguments as to why the Court can, and should, grant summary judgment in their favor despite the fact that the record does not include documents that formally executed a transfer of the Policy to the Violet Trust. First, the Pfeiffer Defendants argue that Przewozniak's actions and statements while litigating this case contradict her present contention that discovery is necessary. For example, Przewozniak stated in her response to their motion for summary judgment that "any documents which might have been executed prior to 2013 (when Herbert named her as beneficiary) are immaterial." R. 58, Pfeiffer Reply at 3 (quoting Przewozniak Response at 2). Przewozniak's position, assert the Pfeiffer

---

interpret Przewozniak to be arguing that Section 11.19 "was included only for tax purposes, implying that its application should be limited here." Pfeiffer Response at 9. To the extent that their interpretation of Przewozniak's argument is accurate, the Court agrees with the Pfeiffer Defendants that nothing in the trust limits the application of Section 11.19 to tax purposes.

Defendants, is thus contradictory because the pre-2013 insurance documents cannot be both "immaterial" and necessary for the Court to grant summary judgment. In addition, they emphasize that upon the filing of the Pfeiffer Defendants' motion for summary judgment, Przewozniak did not file any motion indicating that she needed to conduct discovery in order to respond to the motion for summary judgment. In fact, Przewozniak filed a cross motion for summary judgment, suggesting that Przewozniak agreed that the material facts were undisputed. And Przewozniak did not issue any discovery of her own in the nearly 18 months between the filing of her appearance and her motion. Pfeiffer Response at 2.

The Court rejects those arguments, because Przewozniak's motion does not rely at all on the Violet Trust's relationship to the Policy. Rather, the Pfeiffer Defendants are the ones who invoke the Violet Trust and its legal effect. True, Przewozniak never issued discovery on the issue of the transfer of the Policy into the Violet Trust, but she never asserted its relevance. She merely responded to the Pfeiffer Defendants' motion, which relied on the Violet Trust, by arguing in part that the language of the Violet Trust did not strip Herbert of any authority to change the Policy's beneficiary—though the Court has now rejected that argument. Thus, it is not inconsistent for her to have filed a motion for summary judgment based on the Change-of-Beneficiary Forms, asserting that any pre-2013 documents are "immaterial," while also maintaining that discovery is required for the Pfeiffer Defendants to meet their summary judgment burden. As Przewozniak emphasizes, because the Pfeiffer Defendants are the ones who rely on the Violet Trust, it is their

burden to prove that the Policy was lawfully transferred into the Violet Trust. The Pfeiffer Defendants themselves did not engage in any discovery to prove this critical statement of fact, and they cannot shift that burden onto Przewozniak.

Next, the Pfeiffer Defendants argue that the Change-of-Beneficiary Forms executed by Herbert in 2013 confirm that the Policy was held by the Violet Trust at that time. Pfeiffer Reply at 9. Indeed, when filling out the forms, Herbert purported to be acting as trustee and was identified on the forms as the sole trustee. *See* R. 50-2. However, in ruling on a motion for summary judgment, "all justifiable inferences are to be drawn in [the non-movant's] favor." *Granison v. Hannon*, 2006 WL 2228919, at *1 (S.D. Ind. Aug. 3, 2006) (quoting *Anderson,* 477 U.S. at 255); *see McGreal v. Ostrov,* 368 F.3d 657, 672 (7th Cir. 2004). When construing the facts in the light most favorable to the non-movant, "in the light most favorable" means "that summary judgment is not appropriate if the court must make 'a choice of inferences.'" *Draghi v. County of Cook,* 184 F.3d 689, 691 (7th Cir. 1999). Here, the Pfeiffer Defendants contend that Herbert made a legal mistake by attempting to change the beneficiary of the Policy when he lacked authority to do so. While the Change-of-Beneficiary Forms indicate that Herbert intended to change the beneficiary of the Policy *as trustee*, permitting the inference that the Policy itself was held *by the trust*, it is also possible that Herbert was mistaken as to whether the Policy was actually held by the trust. The Pfeiffer Defendants' motion—and not Przewozniak's—relies on the effect of the Violet Trust on the Policy. Accordingly, the

16

Court cannot grant summary judgment in their favor by inferring that the Policy was in fact held by the trust when Herbert signed the Change-of-Beneficiary Forms.

However, the Pfeiffer Defendants also argue that Przewozniak admitted in her pleadings that the Policy was in the Violet Trust, and she should be held to those admissions. Specifically, Przewozniak's answer to their cross-claim stated, "Upon information and belief, [Przewozniak] admits the allegations" that (1) in 2003 Herbert named the trustee of the Violet Trust as owner of the Policy in the event Violet predeceased Herbert, (2) in 2005 Herbert, acting as Violet's attorney, named Violet as the primary beneficiary and the Violet Trust as the contingent beneficiary, and (3) at the time of Violet's death, the Violet Trust was both the owner and beneficiary of the Policy. Pfeiffer Reply at 3 (citing R. 12 at 9–16, Przewozniak Answer to Cross-Claim ¶¶ 10, 11, 12, 16).

Because the Pfeiffer Defendants argued for the first time in their reply that Przewozniak should be held to her admissions, the Court permitted Przewozniak to file a three-page sur-response to that argument. R. 64, Minute Entry ("The Sur-Response shall respond only to the Pfeiffer Defendants' argument in their reply that Przewozniak has already admitted 'the facts on which she claims discovery is required. No discovery is needed on these admitted facts.'") (quoting Pfeiffer Reply at 6). In her sur-response, Przewozniak explained that she "believed the allegations to be true at the time" based upon the complaint. R. 65, Sur-Response at 2. She also characterized her answers to the cross-claim as something less than admissions, based upon her use of the words "upon information and belief." *Id.* ("The particular

allegations were answered in this fashion since Magdalena could not affirmatively admit the allegations were true since she had not seen the actual insurance documents referenced and none of the documents referenced were attached to the Defendants' Cross-Claim."). She cited no authority in support of the proposition that her admissions "upon information and belief" were not admissions.

The Court agrees with the Pfeiffer Defendants. Federal Rule of Civil Procedure 8 identifies only three proper responses to an allegation—admit, deny, or state a lack of knowledge or information sufficient to form a belief. Fed. R. Civ. P. 8(b)[7]. It "requires a responding party to admit, deny, admit in part and deny in part, or state lack of knowledge or information sufficient to form a belief about the truth of an allegation." *Coach, Inc. v. Bella*, 2012 WL 689266, at *1–2 (N.D. Ill. Feb. 29, 2012); *Donnelly v. Frank Shirey Cadillac, Inc.*, 2005 WL 2445902, at *3 (N.D. Ill. Sept. 29, 2005) ("[I]t is Defendant's obligation to answer the complaint with one of the three permissible responses set out in Rule 8(b)."); *Salt Serv. & Chemicals, Inc. v. Venus Lab'ys, Bixon Chem. Co. Div.*, 1989 WL 6486, at *1 (N.D. Ill. Jan. 20, 1989) ("Rule 8(b) is quite specific in defining the only circumstances under which a pleader can do something other than either admit or deny an allegation: If a party is without knowledge or information sufficient to form a belief as to the truth of an averment, the party shall so state and this has the effect of a denial."). Importantly, "[a]n allegation—other than one relating to the amount of damages—is admitted if a

---

[7]A party responding to a pleading must "admit or deny the allegations asserted against it by an opposing party," otherwise "[a] party that lacks knowledge or information sufficient to form a belief about the truth of an allegation must so state, and the statement has the effect of a denial." Fed. R. Civ. P. 8(b)(1)(B), (b)(5).

responsive pleading is required and the allegation is not denied." Fed. R. Civ. P. 8(b)(6).

As described above, Przewozniak's answer does not deny that the Policy was placed in the Violet Trust. On the contrary, Przewozniak admitted that the Policy was placed into the Violet Trust. Przewozniak Answer to Cross-Claim ¶¶ 10, 11, 12, 16 (answer to paragraph 12 admits that "At the time of Violet Pfeiffer's death on December 17, 2007, the Violet E. Pfeiffer Trust was both the owner and beneficiary of the policy."). This constitutes a judicial admission that the Policy was transferred to the Violet Trust, effectively removing that factual issue from the case. *Pressure Specialist, Inc. v. Next Gen Mfg. Inc.*, 2022 WL 356842, at *2 (N.D. Ill. Feb. 6, 2022) ("A judicial admission is, 'in effect, a waiver.' . . . It is a 'formal concession[ ] in the pleadings' that has 'the effect of withdrawing a fact from contention.'") (quoting *Higgins v. Mississippi*, 217 F.3d 951, 954 (7th Cir. 2000) and *Solon v. Gary Cmty. Sch. Corp.*, 180 F.3d 844, 858 (7th Cir. 1999)); *see Soo Line R. Co. v. St. Louis S.W. Ry. Co.*, 125 F.3d 481, 483 (7th Cir. 1997) ("[J]udicial efficiency demands that a party not be allowed to controvert what it has already unequivocally told a court by the most formal and considered means possible."); *Murrey v. United States*, 73 F.3d 1448, 1455 (7th Cir. 1996) ("If the answer to a complaint or to a request for admissions admits liability, the defendant cannot then deny liability on the

ground that there is evidence that the admission was mistaken."). Przewozniak cannot undue her judicial admission.

The fact that Przewozniak tried to qualify her admission is of no import. The plain language of Przewozniak's answers make clear that she admitted the pertinent allegations. Przewozniak Answer to Cross-Claim ¶ 12 ("Upon information and belief, Defendant *admits the allegations* of paragraph 12 of the Cross-Claim.") (emphasis added). Przewozniak did not state that she lacked the information necessary to admit or deny whether the Policy was transferred to the Violet Trust, which might have put the Pfeiffer Defendants on notice that discovery on that issue was necessary.[8] Instead, she admitted the relevant allegations. Neither Rule 8(b) nor this District's case law permits a responding party to—as Przewozniak puts it—"not affirmatively admit" an allegation by using the phrase "upon information and belief." Sur-Response at 2.

Indeed, Courts in this District have strictly interpreted Rule 8's directives to responding parties, and "[w]here defense counsel fails to comply with Rule 8(b), it is within the Court's discretion to find that the defendant has not denied the plaintiff's

---

[8]In her sur-response, Przewozniak points out that in her answer to the complaint for interpleader, she did plead that she "lacks sufficient information to admit or deny the allegations" that (1) in 2003 Herbert named the Violet Trust as owner of the Policy in the event Violet predeceased Herbert and (2) in 2005 Herbert named Violet as the primary beneficiary and the Violet Trust as contingent beneficiary. Sur-Response at 2 (citing R. 12 at 1–9, Przewozniak Answer to Complaint at 5–6). However, that does not change the fact that later in the same document, Przewozniak admitted those same allegations. Przewozniak Answer to Cross-Claim ¶¶ 10, 11. In addition, and importantly, Przewozniak admitted paragraph 12 of the Pfeiffer Defendants' cross-claim, which (1) alleged that the Violet Trust was the owner and beneficiary of the Policy when Violet died and (2) has no analogous paragraph in the complaint.

allegation and deem that allegation admitted[.]" *Donnelly*, 2005 WL 2445902 at *1 (noting that "[d]espite the seemingly straightforward and unambiguous options available to parties under Rule 8(b), some defense counsel persist in using unacceptable devices in their answers [like saying the document "speaks for itself," demanding "strict proof" of an allegation, and declining to respond because an allegation "states a legal conclusion"], and, in so doing, violate Rule 8(b)."); *see Livesay v. Nat'l Credit Sys., Inc.*, 2022 WL 2353167, at *2 (N.D. Ind. June 30, 2022) ("Defendant should have responded fully to the allegations by admitting or denying [two allegations] . . . that failure [to deny] will be deemed an admission of those facts."); *Champaign-Urbana Healthcare, LLC v. Pryde*, 2020 WL 5249117, at *4 (C.D. Ill. Aug. 12, 2020) (finding allegations in paragraph 26 admitted because "Defendant did not directly respond to the allegation . . . but implied an admission."); *Oropeza v. AppleIllinois, LLC*, 2010 WL 55655, at *4 (N.D. Ill. Jan. 5, 2010) (denying in part the defendants' motion to amend answer and withdraw an admission when one defendant's answer "*admits* upon information and belief both that the named plaintiffs were non-exempt employees and that they were kitchen managers.") (emphasis in original); *Mauch v. Advoc. Health & Hosps. Corp.*, 2008 WL 4866325, at *1 (N.D. Ill. June 23, 2008) (striking the defendant's answer to paragraph 5 sua sponte because the answer "follows an essential admission of all of the FAC's corresponding allegations with an invocation of the disclaimer permitted under [Rule 8(b)(5) regarding lacking knowledge or information]" and "[a]ny such disclaimer is really meaningless under the circumstances"); *Metro. Life Ins. Co. v. Przybil*, 2002

WL 31641591, at *2 (N.D. Ill. Nov. 21, 2002) (striking answers that "dispute" certain allegations but do not admit, deny, or state that the defendant lacks sufficient knowledge, and granting leave to file an amended answer); *Salt Serv.*, 1989 WL 6486, at *1 (striking each answer with the form "Defendant neither admits nor denies the allegations of Paragraph—of the Complaint, but demands strict proof thereof," and deeming the allegations admitted unless the defendant files an amended answer).

All in all, the Court finds that Przewozniak made a judicial admission that the Policy was placed into the Violet Trust. That finding, coupled with the Court's ruling on the interpretation of the Violet Trust, warrants summary judgment in favor of the Pfeiffer Defendants.

## Conclusion

For the foregoing reasons, Przewozniak's motion for summary judgment [48] is denied and the Pfeiffer Defendants' motion for summary judgment [51] is granted. The Court awards to the Pfeiffer Defendants all sums placed on deposit with the Court in this action, plus any accrued interest. *See* R. 9 (Registry Deposit Information Form indicating $120,605.35 deposited as interpleader funds pursuant to 28 U.S.C. § 1335). The cash bond posted by Northwestern Mutual Life Insurance Company, plus any accrued interest, is hereby released to counsel for the Pfeiffer Defendants, Kevin J. Todd of Hoogendoorn & Talbot LLP. The Clerk of the Court is directed to send the cash bond previously deposited with the Clerk of the Court, plus any accrued interest,

by check made out to Kevin J. Todd, to Hoogendoorn & Talbot LLP, 122 South Michigan Avenue, Suite 1220, Chicago, IL 60603. Civil case terminated.

Dated: March 2, 2023

United States District Judge
Franklin U. Valderrama